IN THE SUPREME COURT OF NORTH CAROLINA

No. 220A14

IN RE: INQUIRY CONCERNING A JUDGE, NO. 13-127

BRENDA G. BRANCH, Respondent

This matter is before the Court pursuant to N.C.G.S. §§ 7A-376 and -377 upon a recommendation by the Judicial Standards Commission entered 6 June 2014 that respondent Brenda G. Branch, a Judge of the General Court of Justice, District Court Division 6A, State of North Carolina, be publicly reprimanded for conduct in violation of Canons 1, 2A, 3A(1), and 3A(4) of the North Carolina Code of Judicial Conduct and for conduct prejudicial to the administration of justice that brings the judicial office into disrepute in violation of N.C.G.S. § 7A-376(b). Calendared for argument in the Supreme Court on 6 October 2014, but determined on the record without briefs or oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure and Rule 2(c) of the Rules for Supreme Court Review of Recommendations of the Judicial Standards Commission.

*No counsel for Judicial Standards Commission or respondent.*

ORDER

By the recommendation of the North Carolina Judicial Standards Commission (Commission), the issue before this Court is whether Brenda G. Branch (respondent), a judge of the General Court of Justice, District Court Division, Judicial District 6A, should be publicly reprimanded for conduct in violation of Canons 1, 2A, 3A(1), and

3A(4) of the North Carolina Code of Judicial Conduct and conduct prejudicial to the administration of justice that brings the judicial office into disrepute in violation of N.C.G.S. § 7A-376(b). Respondent waived her right to a formal hearing, and she does not contest the facts or oppose the Commission's recommendation that she be publicly reprimanded.

On 13 January 2014, the Commission's counsel filed a statement of charges alleging that respondent had engaged in inappropriate conduct while presiding over divorce proceedings in which Sergeant First Class Jason Foster (Foster) was the defendant. Foster was deployed overseas at the time of the proceedings. The statement of charges asserted that respondent denied Foster a fair trial in clear violation of the Servicemember's Civil Relief Act of 2003. Respondent filed an answer on 18 February 2014, which was timely received by the Commission. On 9 May 2014, the Commission held a formal hearing of the matter at the North Carolina Court of Appeals. Counsel for the Commission and counsel for respondent presented evidence at the hearing by stipulation. After reviewing all the evidence and hearing oral arguments from counsel, on 6 June 2014, the Commission made its recommendation, which stated the following findings of fact:

1. The investigative panel of the Commission alleged that, in the matter of Halifax County File No. 12-CVD-733, Foster v. Foster, the Respondent engaged in conduct inappropriate to her judicial office by:

a. making inadequate inquiry into the rights afforded to Defendant Jason Foster, a litigant protected under the Servicemember's Civil Relief Act of 2003, 50 U.S.C. App. §§501-597b (hereafter "the SCRA"), and failing to maintain adequate professional competence in this area of the law;

b. imprudently relying upon the counsel for the opposing party in the matter for a determination of the rights afforded to Defendant Jason Foster under the SCRA, without sufficiently performing her own independent inquiry and research into the law, and allowing opposing counsel to present such advice and opinion on the law to the Court outside of the presence of Defendant or anyone appointed as legal representation for Defendant; and,

c. inappropriately denying Defendant Jason Foster the appointment of legal representation guaranteed under the SCRA, thereby denying him his full right to be heard according to the law.

2. In the matter of Halifax County File No. 12-CVD-733, Foster v. Foster, Defendant Jason W. Foster was, at the time of the service of a civil complaint for child custody, child support, alimony, equitable distribution, post-separation support, and attorney fees, serving as an Active Duty Soldier of the rank of Sergeant First Class in the United States Army, stationed in Daegu, South Korea.

3. In a letter to the Court dated 16 July 2012 and filed 26 July 2012, Defendant Jason Foster, in response to the service of the complaint, wrote Respondent to request a stay of proceedings pursuant to the SCRA and claiming that his military service

precluded him from participating in court proceedings until at least 30 April 2013. Defendant, in his letter, wrote that "legal counsel informs me that federal law requires a stay of proceedings for a minimum of 90 days for service members on active duty" and cited the SCRA. Defendant received this advice from a Judge Adjutant General officer stationed in Daegu, Korea.

4. In a separate letter also dated 16 July 2012 and filed 26 July 2012, Defendant's commanding officer also wrote the court to verify that Defendant's military service would preclude his participation in court proceedings until at least 30 April 2013 and to also request a stay of proceedings until that time, personally ensuring that Defendant would be able to participate in the next scheduled proceeding after 30 April 2013. The commanding officer, in his letter, wrote that he was "advised by legal counsel that federal law allows a stay of proceedings for service members on active duty when their ability to defend themselves is materially affected by their material service" and cited the SCRA. The commanding officer's letter explained "Until this date [30 April 2013], SFC Jason Foster is needed by this unit because he is essential to the mission" and further explained "In this instance, SFC's critical role in the national security mission of this command precludes his participation in court proceedings until April 30th, 2013. He will be unable to present any defense at all due to his duties."

5. The stay proposed in the letters from Defendant and Defendant's commanding officer was for approximately nine months.

6. The SCRA states in plain language that, if it appears that Defendant is in military service, the court may not enter a default judgment against the absent member until after the court appoints an attorney to represent Defendant.

7. Sometime between the 6 August 2012 and 8 August 2012 term of Halifax County Family Court, counsel for Plaintiff in this matter requested an order from Respondent seeking further information from Defendant concerning his status under the SCRA and his future availability before ruling on his request to stay the proceedings.

8. In a hearing on Plaintiff's attorney's request, Respondent asked Plaintiff's attorney to provide supporting documents for her request that Defendant's stay be denied. Plaintiff's attorney was allowed to present arguments and evidence challenging the validity of Defendant's claim for a stay. Defendant was not present and was not represented at this proceeding. Respondent did not appoint counsel for Defendant and cites the letters from Defendant and his Commanding officer referring to "the advice of counsel" as evidence.

9. Plaintiff's attorney provided Respondent with an undated, uncited publication, entitled "CROSSING THE MILITARY MINEFIELD: A JUDGE'S GUIDE TO MILITARY DIVORCE IN NORTH CAROLINA" by Mark E. Sullivan, discussing the SCRA and ways to challenge the claims of servicemen under the SCRA, specifically detailing ways that a judge could deny a serviceman a stay, when so requested, by finding that the serviceman did not show "good faith and diligence"

when responding to a court action. Here, Defendant was not properly served with any motion or objection from Plaintiff's counsel, had no notice of her objections to his request for a stay, and was not provided with the documents Plaintiff's counsel presented to Respondent, which Respondent used in consideration of the Plaintiff's counsel's objections.

10. The same article presented to Respondent by Plaintiff's attorney also says in plain language that counsel should be appointed on behalf of an absent serviceman before the entry of a default judgment.

11. Respondent, relying upon the information presented by Plaintiff's attorney, consented to the order requested by Plaintiff's attorney and tasked Plaintiff's attorney with drafting the order requesting more information from Defendant. Respondent entered the order on 4 September 2012 declaring that the information provided by Defendant and his commanding officer was insufficient to justify a request for a stay, and gave Defendant a deadline of 1 October 2012 to provide further justification for his request for a stay. Tracking information reveals that order was not received by Defendant until 24 September 2012, less than one week before the deadline presented in the order.

12. In response to the 4 September 2012 order, neither Defendant, nor anyone representing Defendant, replied to Plaintiff's attorney's inquiries for more information concerning his claim that he would be unable to participate in the scheduled court proceedings. Defendant claims that information about his

military mission was confidential and that he could not provide that information to the Court.

13. On 5 November 2012, Respondent denied Defendant's request for a stay, citing "a lack of good faith and due diligence" by Defendant in failing to respond to the Court's efforts to get more information. Respondent decided that the failure of Defendant to respond to the order for more information was "a willful and direct intention to maneuver and prolong the case at the Defendant's will for as long as the Defendant saw fit without regard to the Plaintiff."

14. In subsequent legal proceedings on 3 December 2012 and 4 March 2013 Respondent entered default judgments against Defendant. Defendant was not present and was not represented at any of these proceedings.

15. Nowhere in the case file for Halifax County File No. 12-CVD-733, prior to or concurrent with the entry of the aforementioned default judgments, is there any notice of representation, appointment of counsel, or any other filings, correspondence, or similar documentary evidence to suggest that Defendant was represented in this matter by counsel. Defendant retained Mr. William T. Skinner IV as counsel on 6 May 2013, within a month of his return to North Carolina.

16. Despite the absence of any legal filing or notice or representation on behalf of Defendant, Respondent claims that she determined that Defendant was represented by counsel based on the following statement in his letter requesting the stay: "Legal counsel informs me that federal law requires a stay of proceedings

for a minimum of 90 days for service members on active duty (50 U.S.C. App. 522(a) (1))." Nowhere in Defendant's is [sic] letter, or the letter from his commanding officer, is any legal counsel named nor is any contact information provided for any legal counsel. Nothing in the [sic] either letter suggests that any counsel referred to is or was licensed to practice in the state of North Carolina.

17. The actions identified by the Commission as misconduct by Respondent, while in violation of the North Carolina Code of Judicial Conduct, do not appear to be the result of any willful or intentional misconduct by Respondent who believed at all times that she was acting within the scope of her discretion and that she was acting to preserve the integrity of the Court. Rather Respondent's misconduct appears to have resulted from insufficient inquiry into her obligations under the SCRA, her insufficiently-based conclusion that Defendant had legal representation, and from an inappropriate reliance on legal arguments advanced by one party that Respondent did not sufficiently research for herself.

18. Respondent has a good reputation in her community. The actions identified by the Commission as misconduct by Respondent appear to be isolated and do not form any sort of recurring pattern of misconduct, and Respondent has been fully cooperative with the Commission's investigation, voluntarily providing information about the underlying legal matter and fully and openly admitting error.

19. Respondent agreed to enter into a Stipulation to bring closure to the matter and because of her concern for protecting the integrity of the court system. With the benefit of hindsight, Respondent now admits and understands her error and that in fact her actions, even if unintentional and not motivated by malice or ill-intent, did constitute conduct prejudicial to the administration of justice that brings the judicial office into disrepute. Respondent acknowledged that she has learned a valuable lesson from this incident and will be particularly vigilant to changes to the laws that affect the growing number of servicemen and servicewomen in North Carolina, and will make every effort to ensure that every person legally interested in a proceeding receives their opportunity to be heard according to the law in the [sic] all future dealings.

20. Respondent agreed to accept a recommendation of public reprimand from the Commission and acknowledged that the conduct set out in the stipulations establishes by clear and convincing evidence that this conduct is in violation of the North Carolina Code of Judicial Conduct and is prejudicial to the administration of justice that brings the judicial office into disrepute in violation of G.S. § 7A-376(b).

In addition to these findings of fact, the Commission made the following conclusions of law based on clear and convincing evidence:

1. Respondent's conduct, as set forth in Paragraphs One through Twenty of the findings of fact, constitutes conduct in violation of Canons 1, 2A, 3A(1) and 3A(4) of the North Carolina Code of Judicial Conduct.

2. Respondent's conduct, as set forth in Paragraphs One through Twenty of the Findings of Fact, constitutes conduct prejudicial to the administration of justice that brings the judicial office into disrepute in violation of N.C.G.S. §7A- 376(b).

When reviewing a recommendation from the Commission, the Supreme Court "acts as a court of original jurisdiction, rather than in its typical capacity as an appellate court." *In re Hartsfield*, 365 N.C. 418, 428, 722 S.E.2d 496, 503 (2012) (order) (citation and quotation marks omitted). We have discretion to "adopt the Commission's findings of fact if they are supported by clear and convincing evidence, or [we] may make [our] own findings." *Id.* (alterations in original) (citations and quotation marks omitted). The scope of our review is to "first determine if the Commission's findings of fact are adequately supported by clear and convincing evidence, and in turn, whether those findings support its conclusions of law." 365 N.C. at 429, 722 S.E.2d at 503 (citation and quotation marks omitted).

After careful review, this Court concludes that the Commission's findings of fact are supported by clear, cogent, and convincing evidence in the record. In addition, we conclude that the Commission's findings of fact support its conclusions of law. We therefore accept the Commission's findings and adopt them as our own.

Based upon those findings and conclusions and the recommendation of the Commission, we conclude and adjudge that respondent be publicly reprimanded.

Therefore, pursuant to N.C.G.S. §§ 7A-376(b) and -377(a5), it is ordered that respondent Brenda G. Branch be PUBLICLY REPRIMANDED for conduct prejudicial to the administration of justice that brings the judicial office into disrepute in violation of N.C.G.S. § 7A-376(b) and which violates Canons 1, 2A, 3A(1), and 3A(4) of the Code of Judicial Conduct.

By order of the Court in Conference, this the 22nd day of January, 2015.

s/Beasley, J.

For the Court

Justice ERVIN did not participate in the consideration or decision of this case.